UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

TAMBERLY SUE YATES            )
                              )
V.                            )        NO. 2:09-CV-284
                              )
MICHAEL J. ASTRUE,            )
Commissioner of Social Security )

REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation on this appeal of the administrative denial of plaintiff's application for disability insurance benefits under the Social Security Act. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 8 and 10].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff alleges disability due to degenerative disc disease and lower extremity pain. She also alleged depression, but the finding by the Administrative Law Judge ["ALJ"] was not challenged in the plaintiff's Motion. Plaintiff was 49 years of age at the time of the hearing decision, an individual "closely approaching advanced age." She has past relevant work experience as a customer service representative/telemarketer, which was found to be semi-skilled work requiring only sedentary exertion. Her alleged disability onset date was June 15, 2007.

The medical evidence is fairly summarized in the defendant Commissioner's brief as follows:

> On June 18, 2007, she saw her primary care physician, Dr. Robert Funke, complaining of back pain (Tr. 136). Plaintiff could heel and toe walk, and the straight leg raise test was negative (*id.*). There was some mild spasm and reduced range of motion (*id.*). The doctor indicated lumbar strain and told Plaintiff she could return to work in four days (*id.*). Plaintiff returned a week later, reporting that the pain was no better (Tr. 135). Dr. Funke ordered an MRI (*id.*), which was done the next day (Tr. 142). The MRI found several abnormalities (Tr. 142-43). A handwritten note (apparently from Dr. Funke) stated that the disc was causing sciatica (Tr. 143). He doubted surgery would be needed but thought Plaintiff might benefit from epidural steroid injections (*id.*). He suggested the patient see Dr. John Marshall (*id.*).
> Dr. Marshall examined Plaintiff on July 6, 2007 (Tr. 132). Pain level was noted at 5/10 (*id.*). The neurologic exam was almost entirely normal, with a negative straight leg raise test, negative FABERE test, downgoing plantars, no clonus, symmetrical deep tendon reflexes, full motor strength, and intact sensation (*id.*). The doctor diagnosed a central disc herniation, spondylosis with annular tear, probable L5-S1 radiculopathy, irritable bowel syndrome, and pelvic/hip pain (Tr. 132-33). He continued the restrictions listed by Dr. Funke (although it is not clear from the record what these restrictions were) (Tr. 133). An injection reduced Plaintiff's right leg pain, but not the pain

the back or buttocks (Tr. 131). The doctor noted the absence of an antalgic fait and stated Plaintiff looked more comfortable. (*Id.*). After a second injection, Plaintiff requested a surgical consult (Tr. 130).

Dr. Ken Smith examined Plaintiff on September 5, 2007 (Tr. 161). He noted that the problems with the right lower extremity had largely resolved (*id.*). Plaintiff reported that her left leg was numb, and, when she walked, painful (*id.*). Plaintiff rated her pain as 5/10 (Tr. 162). Dr. Smith ordered a myleogram (Tr. 194) that was performed on September 19, 2007 (Tr. 194-96), which found nerve root compression at S1 (Tr. 195). At the other segments, there were small-to-moderate defects without stenosis or nerve root compression (*id.*). A CT scan done the same day confirmed the disc extrusion at L5-S1 (Tr. 197-98). It also found slight bulges throughout the lumbar spine and a severe degenerative disc disease at L2-L3 (Tr. 198). At a follow-up appointment October 8, 2007, Plaintiff reported her pain was still 5/10 (Tr. 166) and gait was antalgic (Tr. 167). Plaintiff decided to have back surgery. The doctor indicated Plaintiff could not return to work at that time and that he would re-analyze the issue post-operation (Tr. 168). Plaintiff underwent surgery later that month (Tr. 155-57); a 32 mm x 8 mm acute fragment was successfully removed from her back (Tr. 156).

On November 7, 2007, Plaintiff followed up with Dr. Smith (Tr. 173-75). She reported her health as good and appeared to be in no acute stress (Tr. 174). The surgical site was healing well, but Plaintiff still had an antalgic gait (*id.*). Plaintiff's radiculopathy and low back pain were improved by the operation, and Plaintiff was sent to physical therapy (Tr. 175). The next month, pain had decreased to 4/10 and the straight leg raise test was negative (Tr. 177).

State agency physician Dr. James Moore reviewed the medical evidence on January 23, 2008 (Tr. 233-40). Based on Plaintiff's response to surgery, he believed that by June 2008 (twelve months from the alleged date of onset), she could lift fifty pounds occasionally and twenty-five frequently, as well as sit about six hours a day and stand the same (Tr. 234, 240). She was not limited posturally, except that she could climb ladders, ropes, and scaffolds only occasionally (Tr. 235).

On January 21, 2008, Dr. Smith noted that Plaintiff was making gradual improvements in pain and spasm (Tr. 242). Tenderness was present in the lower right lumbar spine and flexion was limited; however, the straight leg raise test was negative bilaterally (Tr. 243-44). Slightly reduced strength (4+) was noted in one muscle, the anterior tibialis (Tr. 244). There was reduced sensation in one part of the calf (*id.*). Deep tendon reflexes were normal (*id.*).

An MRI, performed on March 13, 2008, showed postoperative changes at L4-L5 and L5-S1, but no recurrence of disc protrusion or extrusion (Tr. 251). There was thickening and enhancement at the left S1 nerve root (*id.*). Further up in the spine, there was degenerative disc disease, but this was stable (*id.*). Dr. Smith's March 24, 2008 examination notes contain essentially the same information as the notes he previously made in January 2008. In his March notes, Dr. Smith stated (without elaboration) that Plaintiff could not return to work at the time but that further work issues would be left to the patient's treating physician (Tr. 249).

Plaintiff returned to Dr. Marshall on May 8, 2008 (Tr. 280-81). The doctor noted stable motor activity, sensory activity, and deep tendon reflexes (Tr. 280). Plaintiff indicated that she could manage her pain with Lortab and had been cutting back on the dose (*id.*). Dr. Marshall gave Plaintiff an injection in May, and another in June (Tr. 278-79).

Plaintiff also saw Dr. Smith on May 22, 2008. There were still some a few abnormal findings, but anterior tibialis strength had improved to 5- (from 4+) and the antalgic gait was slight (Tr. 289). Physical therapy once a week was recommended (*id.*). In July 2008, Dr. Smith recommended a routine home exercise program for prevention of future complications (Tr. 285). He set the follow-up visit for six months (Tr. 286). Dr. Smith included language from several previous reports: "The patient cannot return to work at this time," but without any explanation (*id.*).

On May 26, 2008, Dr. Frank Pennington, a surgeon, reviewed the medical evidence for the state agency (Tr. 269-76). The Dr. Pennington summarized each medical development since June 2007 (Tr. 276). He concluded that Plaintiff could lift twenty pounds occasionally and ten frequently. She could perform various postural activities occasionally (except that she could not climb ladders and the like) (Tr. 270-71).

In June 2008, Dr. Funke reported chronic pain and stated (without elaboration) that Plaintiff was unable to work (Tr. 314). On August 11, 2008, Dr. Funke noted that Dr. Smith had released Plaintiff for the next six months and had handed over prescribing responsibilities (*id.*). Dr. Funke indicated that Plaintiff should return in ten months for a physical (*id.*). In January 2009, Dr. Funke checked a box indicating Plaintiff could not perform sedentary work, but did not provide any basis for that judgment (Tr. 313).

Meanwhile, Plaintiff had received another set of injections from Dr. Marshall in September 2008 (Tr. 316). In October, she reported that the injection had helped (*id.*). Dr. Marshall agreed that there was a good response to the new injections and observed that Plaintiff "looks more comfortable today." (*Id.*) The doctor raised the possibility of radiofrequency ablation, but Plaintiff indicated that she was not interested at that time (*id.*). Another injection was performed in December 2008 (Tr. 335).

On February 7, 2009, Plaintiff filled out a pain questionnaire at a pain clinic (Tr. 331-33). She indicated that sitting, standing, walking, shifting positions, and bending had no effect on her pain (Tr. 331). Medicines and injections helped (*id.*). The only items endorsed as worsening pain were twisting and surgery (*id.*). She could go to her mailbox, shop, drive in a car, and do housework (*id.*). Four days later, on February 11, Plaintiff rated her pain at 3/10 (Tr. 329). She told nurse practitioner C.L. Conrad, however, that her pain was made worse by "prolonged sitting, standing, [and] bending" (*id.*). Ms. Conrad noted that Plaintiff rose from a seated position without difficulty and walked with a normal gait (Tr. 330). She had good range of motion, with pain on extension and twisting (*id.*). There was one area of tenderness and some decreased sensation on the left (*id.*). Muscle strength was grossly 5/5 and deep tendon reflexes were normal (*id.*). Leg raising tests were negative and feet were

warm (*id.*). Dr. Sameh Ward gave Plaintiff an injection the next week (Tr. 328). The next month, on March 18, 2009, Dr. Ward performed radiofrequency ablation (Tr. 326).

On April 30, 2009, Plaintiff reported to Nurse Conrad that she was "doing well" (Tr. 325). Her pain was only a one on a ten-point scale, and she was pleased with this result (*id.*). She did have a "little flare" of pain when she used a weed wacker (i.e., a string trimmer), but it was "not significant"(*id.*). Because Plaintiff was doing well, no further visits were scheduled (*id.*).

[Doc. 11, Pgs. 2-7].

At the administrative hearing, the ALJ heard testimony from the plaintiff and from Cathy Sanders, a Vocational Expert. Ms. Sanders identified the plaintiff's past relevant work as semi-skilled and sedentary. The ALJ asked Ms. Sanders a series of hypothetical questions. First he asked her to assume an individual of the plaintiff's age, educational background and work experience. He then stated in his question that "this person could do light work with occasional posturals; ladders, ropes, scaffolds, never. Would there be jobs?" A variety of jobs were identified with 32,000 in the region and 3 million in the United States. He then asked her to assume the same hypothetical with a sit/stand option. She identified 4,500 jobs in the region and 525,000 in the country as a whole. He then asked her to assume the same person with the same restrictions but limited to sedentary work. She identified 2,800 jobs in the region and 300,000 in the country. [Tr. 28-30].

In his hearing decision, the ALJ found that the plaintiff had severe impairments of degenerative disc disease and lower extremity pain. [Tr. 12]. He found "that the claimant has the residual functional capacity for light work... that requires no more than occasional climbing, balancing, stooping, kneeling, crouching and crawling, and that allows for a sit/stand option." [Tr. 13]. He stated that he "considered the objective medical findings of Dr. Funke, Dr. Marshall, Dr. Smith, and the claimant's treating physician with Pain Medicine

Associates,..." in finding her residual functional capacity and limitations. He found Dr. Funke's opinion that the plaintiff was limited to less than a full range of sedentary work to be "inconsistent with the overall medical evidence of record and...not supported by his own objective findings on examination." He gave "great weight to the opinion of the state agency medical consultants who reviewed the claim in May 2008..." He then found that the plaintiff could return to her past relevant work as a customer service representative/telemarketer. Accordingly, she was not "under a disability, as defined in the Social Security Act, from June 15, 2007 through the date of this decision" (which was filed June 16, 2009). [Tr. 17].

Plaintiff argues that the opinions of Dr. Funke and Dr. Smith, as treating physicians, were not accorded the "complete deference" she alleges they are due under the regulations and under controlling case law. In fact, plaintiff asserts that the ALJ did not even address the opinion of Dr. Smith. The state agency physicians' opinions, says plaintiff, simply cannot constitute substantial evidence to support the ALJ's finding of residual functional capacity in the face of the treating physicians' opinions that she could not work and was capable of less than sedentary activity.

This case is not, either factually or legally, as black and white as the plaintiff suggests. As noted in the summary of the evidence above, objective findings of all of her physicians indicated steady progress, and a lessening of pain as more procedures were utilized. In fact, on April 30, 2009, she rated her pain as "one on a ten point scale." As noted by the Commissioner, there is no objective evidence that her pain in and of itself was disabling.

It is also true that the respective opinions of Dr. Smith and Dr. Funke are cryptic, and were made without elaboration as to the reasons why she could not return to work or that she could not perform a full range of sedentary work.

However, even though the opinions of the treating physicians lack clarification as to their underlying substance, they are opinions of treating physicians. The Court is not at all satisfied that they form a basis for a determination that the plaintiff was disabled, but feels that more is needed than the opinions of the non-examining state agency physicians to overcome the understandable bias toward the opinions of treating physicians. It is true, as the Commissioner argues, that there is no inherent requirement that the Commissioner send a claimant for a consultative examination. But there is a requirement that substantial evidence support the Commissioner's findings. The latest of the two state agency opinions was in May of 2008, before the visits to the pain clinic and other examinations by her treating doctors. A consultative examination is necessary to clarify the plaintiff's residual functional capacity.

Thus, while the Court feels that the Commissioner's position, and the actions of the ALJ were substantially justified, the Court is of the opinion that further development of the medical record is needed. Accordingly, it is respectfully recommended that the plaintiff's Motion [Doc. 8] be GRANTED for purposes of remanding the case to the Commissioner. It is also recommended that the defendant Commissioner's Motion [Doc. 10] be DENIED.[1]

---

[1] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).

Respectfully submitted:


  s/ Dennis H. Inman
United States Magistrate Judge